UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

LARRY JAMES BRADLEY,

     Petitioner,

v.                                 Case No. 8:18-cv-2434-KKM-JSS

SECRETARY, DEPARTMENT

OF CORRECTIONS,

     Respondent.

_____

## ORDER

Larry James Bradley, a Florida prisoner, timely[1] filed a pro se Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging his state court convictions based on alleged failures of his trial and appellate attorneys and an equal protection violation in the imposition of his sentence. (Doc. 8.) Having considered the petition (*id.*), the supporting

---

[1] A state prisoner has one year from the date his judgment becomes final to file a § 2254 petition. *See* § 2244(d)(1). This one-year limitations period is tolled during the pendency of a properly filed state motion seeking collateral relief. *See* § 2244(d)(2). Bradley filed a direct appeal, and the state appellate court affirmed Bradley's convictions and sentences. That court denied Bradley's motion for rehearing on August 4, 2017. His judgment became final on November 2, 2017, upon expiration of the 90-day period to petition the Supreme Court of the United States for a writ of certiorari. *See Bond v. Moore*, 309 F. 3d 770, 774 (11th Cir. 2002). After 234 days of untolled time elapsed, Bradley filed a state habeas petition alleging ineffective assistance of appellate counsel on June 25, 2018. Before the state appellate court denied Bradley's motion for rehearing in that proceeding on October 15, 2018, Bradley filed his § 2254 petition on September 28, 2018. Therefore, less than one year of untolled time elapsed, and the petition is timely.

memorandum of law (Doc. 2), and the response in opposition (Doc. 11), the Court denies the petition.[2] Furthermore, a certificate of appealability is not warranted.

# I. <u>BACKGROUND</u>

## A. Procedural Background

The State of Florida originally filed a felony information charging Bradley with one count of attempted lewd or lascivious molestation. (Doc. 11-2, Ex. 1, appellate record p. 120.) The State amended the information to charge Bradley with one count of lewd or lascivious molestation and one count of harassing a witness. (Doc. 11-1, Ex. 1, appellate record p. 26.) The State filed a second amended information, which also charged one count of lewd or lascivious molestation and one count of harassing a witness. (*Id.*, appellate record p. 33.) The second amended information corrected the date that the State alleged Bradley committed the lewd or lascivious molestation. (*Id.*, appellate record pp. 26, 33.) But the second amended information did not charge an attempt count. (*Id.*, appellate record p. 33.)

A state court jury convicted Bradley of both counts. (*Id.*, appellate record pp. 38-39.) The trial court sentenced him to concurrent terms of life in prison as a prison releasee reoffender for lewd or lascivious molestation, and to 117.375 months in prison for harassing a witness. (*Id.*, appellate record pp. 40-46.) Bradley filed a motion to correct a sentencing error under Florida Rule of Criminal Procedure 3.800(b)(2), which provides for

---

[2] Although provided an opportunity to reply (*see* Doc. 9, p. 3), Bradley did not do so.

such motions while an appeal is pending. (Doc. 11-5, Ex. 9.) The state trial court denied Bradley's constitutional challenge to his prison releasee reoffender sentence, but corrected a scrivener's error in the written judgment. (*Id.*, Exs. 10 &11.)

The state appellate court per curiam affirmed Bradley's convictions and sentences. (Doc. 11-5, Ex. 5.) The state appellate court also denied Bradley's petition alleging ineffective assistance of appellate counsel, filed under Florida Rule of Appellate Procedure 9.141. (*Id.*, Exs. 12 & 13.)

### B. Factual Background[3]

Bradley was in a romantic relationship with the mother of the seven-year-old victim. (Doc. 11-3, Ex. 1, pp. 268.) They lived together, along with their infant son. (*Id.*, pp. 266-71.) On the evening of June 8, 2014, the victim's mother declined Bradley's sexual advances. (*Id.*, pp. 272, 275.) When she went to sleep, Bradley and the victim were watching a movie on the couch in the living room. (*Id.*, pp. 273, 276.) The victim's mother awoke in the night and went to the living room. (*Id.*, p. 277.) The TV was still on but the victim and Bradley were not there. (*Id.*) When the victim's mother opened the victim's bedroom door, she saw Bradley "laying across" the victim in the victim's bed. (*Id.*, p. 278.) The victim's pajama bottoms were "not all the way down but down enough to where her

---

[3] The factual background is based on the trial transcript unless otherwise noted.

pants shouldn't have been that low." (*Id.*, p. 283.) Bradley moved off the bed and stood up, and the victim's mother saw his erect penis outside of the top of his pants. (*Id.*, p. 282.)

The victim testified at trial that while she and Bradley were on the couch, Bradley used his hands to touch her on her buttocks and thighs. (*Id.*, pp. 378-79.) The victim then explained that in her room, Bradley touched her in the same area with his hands and he also touched her under her buttocks with his penis. (*Id.*, pp. 384-87.)

The victim's mother kicked Bradley out of the apartment that night. (*Id.*, pp. 284-85.) The next day, she dropped the victim off with a friend while she went to work. (*Id.*, pp. 286-89.) Bradley arrived at the friend's house. (*Id.*, p. 424.) The friend, not knowing what had happened the night before, allowed Bradley to talk to the victim alone. (*Id.*, pp. 424-26, 436.) Bradley told the victim to convince her mother that he did not do anything, and that if she told her mother what happened, he would go to jail. (*Id.*, pp. 390-91.) The victim felt scared after Bradley talked to her. (*Id.*, p. 391.) The victim's mother called the police later that day, but the victim did not tell her mother, the police, or the nurse who examined her what happened. (*Id.*, pp. 291, 391-93.) After the victim and her mother later moved from Florida to Indiana, the victim disclosed the events to a teacher. (*Id.*, p. 397.)

## II. <u>STANDARD OF REVIEW UNDER SECTION 2254</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief

under the AEDPA can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of § 2254(d)(1), a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the relevant state-court decision." *Id.* at 412. A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

For purposes of § 2254(d)(2), a state court's findings of fact are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct . . ."). A petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" for a federal habeas petitioner to prevail and that the state court's "clear error" is insufficient).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and

defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). When the relevant state-court decision is not accompanied with reasons for the decision—such as a summary affirmance without discussion—the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* The state may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Id.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Bradley brings several claims for ineffective assistance of counsel under the Sixth Amendment. Under the well-known, two-part standard articulated in *Strickland v. Washington*, 466 U.S. 668 (1984), to succeed, he must show both deficient performance by his counsel and prejudice resulting from those errors. *Id.* at 687.

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The lynchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim of ineffective assistance of appellate counsel, Bradley must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially

higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

## IV. <u>ANALYSIS</u>

### A. Ground One

Bradley contends that appellate counsel was ineffective "for failure to argue the sufficiency of the information to charge a crime under any valid law" as he "stands convicted on a charge not made in the originally charged offense, in violation of due process of law." (Doc. 8, p. 5.) He appears to contend that the original information and the second amended information were impermissibly vague and failed to put him on notice of the offenses, thus resulting in an arbitrary conviction. (Doc. 2, pp. 6-7.) Bradley also argues that the offense of attempted lewd or lascivious molestation "raises a question of over-breadth." (Doc. 2, p. 8.)

The state appellate court denied Bradley's ineffective appellate assistance claim without discussion when it denied his state habeas petition alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141. (Doc. 11-5, Ex. 13.) Bradley fails to show that the state court's decision was unreasonable. As an initial matter,

it appears that any challenge to the second amended information—upon which the State prosecuted Bradley—was not preserved for appeal because Bradley did not object to the second amended information at the trial court level. *See Jenkins v. State*, 6 So.3d 71, 72 (Fla. 3d DCA 2008) ("[B]y proceeding to trial under the information, Jenkins waived any objection to it"). Bradley does not show that appellate counsel was ineffective in not raising an unpreserved argument. *See, e.g., Diaz v. Sec'y, Dep't of Corr.*, 402 F.3d 1136, 1142 (11th Cir. 2005) ("Under Florida law, an error that passed without objection cannot be raised on appeal; appellate counsel, therefore, is not ineffective for failure to raise a meritless argument."); *Atkins v. Singletary*, 965 F.2d 952, 957 (11th Cir. 1992) ("[A]ppellate counsel rendered effective assistance because he either properly argued Atkins' claims on appeal or he was prohibited from raising on appeal issues that had not been preserved for appeal at the trial level.").

Furthermore, to the extent Bradley's ineffective assistance claim depends on the interpretation and application of state law concerning charging documents, he cannot obtain federal habeas relief. Florida Rule of Criminal Procedure 3.140 contains provisions governing the process of bringing criminal charges by filing a charging document, as well as the requirements of charging documents. Under Florida law, the State "is not required to seek leave of court to amend an information and may substantively amend an information at any time, up to and including the time of trial, 'unless there is a showing of

prejudice to the substantial rights of the defendant.' " *State v. Mulvaney*, 200 So.3d 93, 95 (Fla. 5th DCA 2015) (quoting *State v. Anderson*, 537 So.2d 1373, 1375 (Fla. 1989)). To the extent that the question underlying Bradley's ineffective appellate assistance claim rests on a determination of state law, this Court must defer to the state appellate court's determination that a state-law challenge on appeal would have failed. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim— is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that appellate counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [petitioner's counsel] objected to the introduction of [petitioner's] statements based on [state law] – the objection would have been overruled. . . . Therefore, [petitioner's counsel] was not ineffective for failing to make that objection.").

Nor does Bradley show that the state appellate court unreasonably rejected his claim to the extent it involves an underlying federal due process challenge. Initially, to the extent Bradley's challenge is based on alleged deficiencies in the original information, he fails to show that appellate counsel was ineffective in not raising such challenges because that

document was superseded by the amended versions, and therefore was not the information under which the State prosecuted him at trial. It cannot therefore have caused any due process violation in terms of notice as it was not the operative charging document.

Bradley also fails to show that appellate counsel was ineffective in not raising a challenge to the second amended information. A charging document is sufficient if it (1) "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend" and (2) "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Accordingly, "[d]ue process requires an indictment to provide notice sufficient to allow a defendant to prepare an adequate defense." *United States v. Lehder-Rivas*, 955 F.2d 1510, 1519 (11th Cir. 1992). Furthermore, "[i]f an indictment specifically refers to the statute on which the charge was based, the reference to the statutory language adequately informs the defendant of the charge." *United States v. Fern*, 155 F.3d 1318, 1325 (11th Cir. 1998). And "[e]ven an inadequate indictment satisfies due process if the defendant has actual notice, so that she suffers no prejudice." *United States v. Odom*, 252 F.3d 1289, 1298 (11th Cir. 2001).

Here, the second amended information put Bradley on notice of the charges by identifying the relevant statute for each offense, the elements of each offense, the date and location of each offense, and the name of the victim. (Doc. 11-1, Ex. 1, appellate record p.

33.) Bradley fails to show that the amendments to the information resulted in a lack of notice, impacted his ability to present a defense, or otherwise affected his rights. As Bradley fails to show that the state court's denial of his ineffective assistance of appellate counsel claim was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination, he is not entitled to relief on Ground One.

### B. Ground Two

Bradley argues that appellate counsel was ineffective "for failure to argue the amended information violates the due process guarantees of [the] Florida and United States Constitutions." (Doc. 8, p. 7.) He contends that he was prejudiced in his preparation of a defense to the amended charge "because the amended information is not a continuation of the originally charged crime." (*Id.*)

The state appellate court rejected Bradley's claim when it denied his Appellate Rule 9.141 state habeas petition alleging ineffective assistance of appellate counsel. Bradley does not show the state court's determination was unreasonable. Again, Bradley made no challenge to the second amended information at the trial court level and he fails to show that appellate counsel was ineffective in not raising an unpreserved argument. *See Diaz*, 402 F.3d at 1142; *Atkins*, 965 F.2d at 957. Additionally, as addressed in Ground One, to the extent Bradley's ineffective assistance claim turns on an interpretation of state law

13

governing charging documents, this Court must defer to the state court's determination that counsel was not ineffective in failing to raise a state law challenge. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932.

Nor does Bradley show that appellate counsel was ineffective for not raising a federal due process challenge about the second amended information. For the reasons discussed in Ground One, the second amended information put Bradley on notice of the charges he faced, and Bradley fails to show that the notice was insufficient to satisfy due process. Nor does he demonstrate how the amendment of count one from an attempted crime to a completed crime or the addition of count two impacted his ability to prepare a defense. To the extent Bradley intends to argue that the charges in the second amended information were required to "relate back" to the charge in the original information, civil rules of pleading such as Federal Rule of Civil Procedure 15 and Florida Rule of Civil Procedure 1.190 do not apply under Florida law governing criminal charging documents. Nor does Florida Rule of Criminal Procedure 3.140(j), which authorizes amendments to charging documents, contain any requirement that an amended information "relate back" to the original information. Because Bradley does not show that the state appellate court's rejection of his claim was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination, he is not entitled to relief on Ground Two.

14

## C. Ground Three

Bradley argues that trial counsel was ineffective for failing to present an adequate motion for judgment of acquittal (JOA). Bradley did not file a motion for postconviction relief, but he raised ineffective assistance of trial counsel on direct appeal. Within his arguments challenging the sufficiency of the evidence, Bradley claimed that trial counsel was ineffective under *Strickland* for not preserving a challenge to the sufficiency of the evidence. (Doc. 11-5, Ex. 2, pp. 14, 22-23.) Although Bradley did not identify his ineffective assistance of trial counsel claim as a distinct claim for relief, this Court will assume that Bradley exhausted his ineffective assistance of trial counsel claim in state court.[4] This Court will further assume that the state appellate court adjudicated the claim on the merits. In Florida, ineffective assistance of trial counsel claims are typically raised in postconviction proceedings, but may be raised on direct appeal when apparent from the face of the record. *See Bruno v. State*, 807 So.2d 55, 63 n.14 (Fla. 2001) ("A claim of ineffectiveness can properly be raised on direct appeal [instead of in postconviction proceedings] only if the record on its face demonstrates ineffectiveness").[5] The State's

---

[4] Respondent does not challenge the ineffective assistance of trial counsel claim for lack of exhaustion. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

[5] The Florida Supreme Court recently held that an unpreserved claim of ineffective assistance of trial counsel under *Strickland* "may not be raised or result in reversal on direct appeal." *Steiger v. State*, ___

answer brief did not raise any procedural bar to Bradley's embedded ineffective assistance of trial counsel claims. (Doc. 11-5, Ex. 3, pp. 22-23.)

Bradley's trial counsel made a boilerplate motion for JOA, alleging only that the State failed to make a prima facie showing of guilt. (Doc. 11-4, Ex. 1, p. 520.) Because Bradley fails to show a reasonable probability that a more detailed motion for JOA would have changed the outcome of the proceeding, he does not establish that the state appellate court unreasonably denied his ineffective assistance of trial counsel claim.

To prove the count of lewd or lascivious molestation, the State must establish beyond a reasonable doubt that Bradley, in a lewd or lascivious manner, intentionally touched the victim's buttocks or the clothing covering the victim's buttocks. *See* § 800.04(5)(a), Fla. Stat. Bradley contends that the victim's testimony was insufficient to show that he touched her buttocks or the clothing covering her buttocks. He cites portions of the victim's testimony where she explained that Bradley touched her "near my butt area," "maybe under my thigh," "where my butt area was," and "like under the butt cheek" and in which she agreed with the prosecutor's descriptions of the area as "your back thigh area" and "your butt cheek area." (Doc. 8, p. 8.) He claims that the victim's testimony "simply

---

So.3d ___, 2021 WL 5226296 at *5 (Fla. Nov. 10, 2021). However, this rule was not yet in effect at the time of Bradley's direct appeal.

does not demonstrate that [he] ever touched [the victim's] buttocks or the clothing covering her buttocks." (*Id.*)

But Bradley fails to acknowledge portions of the victim's testimony where she testified that he touched her buttocks or the clothing covering her buttocks. When the victim testified about Bradley touching her while they were on the couch, she pointed to her body, indicating that Bradley touched "the lower part of [her] butt cheek":

Q      Where did he start touching you?

A      Near my butt area.

Q      So you're laying down on your side and you said near your butt area, where specifically on your butt area was he touching you?

A      Maybe under my thigh.

[STATE]: Judge, can she just stand up real quick, so she can point for the jury?

THE COURT: Sure, that's fine.

BY [THE STATE]:

Q      [Victim], can you stand up for me, sweetie? And can you come down here for me? Come around where I am. So, come to me, walk, walk, walk.

There you go. Now, so when you're laying on the couch where on your butt area is he touching you, can you show the jury?

A.      Right here. (Witness indicating.)

Q.      So, you're talking about the lower part of your butt cheek and upper part of your thigh?

A.      Yes.

(Doc. 11-3, Ex. 1, p. 379.)

When she testified about what happened in her bedroom, the victim stated that Bradley touched her in the same part of her body she had indicated earlier:

Q.      What did he do that night in your room?

A.      He started touching me with his hands again.

Q.      And when he first started touching you with his hands, where was he touching you?

A.      Still where my butt area was.

Q.      The same area that you showed us earlier, your back thigh area?

A.      Yes.

(Doc. 11-3, Ex. 1, p. 384.)

In ruling on a motion for judgment of acquittal, a state trial court must consider the evidence in the light most favorable to the State. *See Boyd v. State*, 910 So.2d 167, 180 (Fla. 2005) ("A trial court should not grant a motion for judgment of acquittal 'unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974))); *State v. Odom*, 862 So.2d 56, 59 (Fla. 2d DCA 2003) ("A trial court should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt."). Considering the victim's testimony in the light most favorable to the State, Bradley fails to show a reasonable probability that the outcome of the proceeding would have been different even if counsel had raised a more thorough motion for JOA.

Nor does Bradley show that the state court unreasonably rejected his ineffective assistance claim concerning the motion for JOA on the count of harassing a witness. Section 914.22(3)(b), Fla. Stat., provides:

> (3) Whoever intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from:
> . . .
>
> (b) Reporting to a law enforcement officer or judge the commission of a possible commission of an offense or a violation of a condition of probation, parole, or release pending a judicial proceeding

. . .

or attempts to do so, commits the crime of harassing a witness, victim, or informant.

Bradley contends that the victim's testimony that he "told her to try and convince her mother that nothing happened or he would go to jail . . . is insufficient to support the charge of harassing a witness." (Doc. 8, p. 9.) Bradley's § 2254 petition does not explain how the victim's testimony was inadequate to establish the offense. The Court notes that on direct appeal, Bradley argued that harassment requires more than one communication and that his singular communication to the victim therefore could not constitute harassment. (Doc. 11-5, Ex. 2, pp. 20-21.)[6] Bradley also argued that the victim's testimony showed that he only intended to prevent, dissuade, hinder, or delay a report to her mother, not a report to law enforcement or a judge. (*Id.*, pp. 21-22.)

Bradley fails to show that the state court's rejection of his claim was unreasonable. When taken in the light most favorable to the State, the evidence showed that Bradley intentionally harassed the victim, establishing the first element of the offense. Although Bradley made a single communication to the victim, Florida law does not require that the communication must be repeated or continual to constitute harassment. Nor does Bradley

---

[6] Neither the statute nor the standard jury instruction defines "harass." *See* §§ 914.21, 914.22(3), Fla. Stat.; Fla. Std. Jury Instr. (Crim.) 21.11.

20

point to any caselaw interpreting harassment to mandate repetitive conduct, even if that occurs in the ordinary case. *See Harassment, Black's Law Dictionary* (11th ed. 2019) (defining "harassment" as "words, conduct or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose; purposeful vexation"). Furthermore, Bradley appeared at the victim's location for the purpose of talking to her alone, and his statements scared her.

The State's evidence also permitted a jury to find it established the second element of the offense. The victim's testimony about what Bradley told her shows that at a minimum, Bradley attempted to hinder, prevent, or dissuade the victim from reporting the offense. The victim confirmed, in fact, that she delayed reporting the offense until after she moved to another state. And while Bradley told the victim not to say anything to her mother, his warning to the victim that he would go to jail if she did so reflects an intent to avoid the victim ultimately reporting to law enforcement. Section 914.22(3) prohibits harassing "another person" so as to hinder, delay, prevent, or dissuade "any person" from reporting an offense to law enforcement or a judge, or attempting to do so. This language does not require that the person who is harassed be the same person who directly reports an offense to law enforcement. Nor does it place any temporal restrictions on the reporting.

Moreover, Bradley presents no authority in support of his contention that the offense of harassing a witness cannot be proven when an individual harasses a child witness with the intent of ultimately preventing a report that is made to law enforcement through the child witness's parent.[7] In the absence of any such specific authority supporting his proposed argument, Bradley fails to show that there was no view of the evidence that the jury could lawfully take of it favorable to the State that could be sustained under the law. *See Boyd*, 910 So.2d at 180. Therefore, Bradley has not shown a reasonable probability that the trial court would have ruled in his favor when considering the evidence of guilt in the light most favorable to the State, as it was obligated to do, even if presented with a more comprehensive motion for JOA. *See Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001) ("A petitioner has the burden of establishing his right to federal habeas relief and of proving all facts necessary to show a constitutional violation."). Additionally, to the extent the state court's rejection of Bradley's ineffective assistance of trial counsel claim concerns an interpretation and application of the language contained in the state statute,

---

[7] Bradley supported his argument by citing the instruction provided to his jury, which stated that the prosecution was required to show that Bradley intended to prevent the victim from reporting the offense to law enforcement (or attempted to do so). But Bradley does not show that the jury instruction, rather than the statute itself, would have been controlling in assessing a motion for JOA. Further, as addressed in the order, Bradley cannot meet his burden to show that the state court unreasonably rejected his ineffective assistance of trial counsel claim because he offers no authority in support of his interpretation of § 914.22(3), Fla. Stat.

this Court must defer to the state court's determination of state law. *See Pinkney*, 876 F.3d at 1295; *Callahan*, 427 F.3d at 932.

Bradley fails to show that the state court's denial of his ineffective assistance of trial counsel claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Therefore, he is not entitled to relief on Ground Three.

### D. Ground Four

Bradley asserts that § 775.082(9), Fla. Stat., as applied to him, violates the equal protection guarantees of the United States and Florida Constitutions. Bradley qualifies as a prison releasee reoffender (PRR) under this section, which establishes enhanced sentencing for offenders who commit certain crimes within three years of their release from prison. The State may choose to seek PRR sentencing for a qualifying defendant; if the State does so, the trial court must sentence the defendant to life in prison upon conviction of a felony punishable by life. § 775.082(9)(a)3.a., Fla. Stat. Therefore, because Bradley's conviction for lewd or lascivious molestation was punishable by life[8] and the State sought PRR sentencing, his life sentence was mandatory.

---

[8] Bradley was convicted of lewd or lascivious molestation under § 800.04(5)(b), Fla. Stat., a life felony. Section 775.082(3)(a)4.a.(I), (II), Fla. Stat., provides that a person convicted of a life felony committed on or after September 1, 2005, that is a violation of § 800.04(5)(b) may be punished by "[a] term of imprisonment for life" or "[a] split sentence that is a term of at least 25 years' imprisonment and not exceeding life imprisonment, followed by probation or community control for the remainder of the person's natural life[.]"

Bradley argues that the statute, as applied to him, violates equal protection because no rational basis exists for classifying recidivists based on whether their new offenses occur before or after three years following their release from custody. He argues that there was no rational basis to subject him to a mandatory life sentence because he committed a life felony within three years of release, whereas others who re-offend by committing a life felony more than three years after release are not subject to the same mandatory terms based on nothing other than the timing of the new offense in relation to their release from prison.

As an initial matter, to the extent Bradley argues that application of the PRR statute to him violated his rights under the Florida Constitution, his claim is not cognizable on federal habeas review. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

Bradley raised the federal equal protection claim in a motion to correct sentencing error, filed under Florida Rule of Criminal Procedure 3.800(b)(2). (Doc. 11-5, Ex. 9.) The state trial court rejected Bradley's as-applied challenge. (Doc. 11-5, Ex. 10.) It found that "[t]he fact that a non-PRR offender who commits a life felony would not be subjected to a mandatory life sentence does not in itself constitute an equal protection violation, as-applied to the Defendant." (Doc. 11-5, Ex. 10, appellate record pp. 412-13.) The court quoted *Rollinson v. State* for the holding that, instead, "[e]qual protection deals with

24

intentional discrimination and *does not require proportional outcomes*." 743 So.2d 585, 589 (Fla. 4th DCA 1999) (emphasis in the state court's order). Following the state trial court's denial, Bradley raised this claim on direct appeal. The state appellate court per curiam affirmed Bradley's convictions and sentences without discussion.

Although Bradley labels his claim as an as-applied challenge to the PRR statute, the gravamen of his claim—that there is no rational basis to treat re-offenders who commit life felonies differently based on whether their new offenses occur more than three years after their release from prison—appears to raise a facial challenge to the statute's constitutionality. But "habeas review is no occasion for considering the facial constitutionality of [a state] statute . . . [a federal habeas court] simply evaluate[s] the constitutional error . . . allegedly committed during the course of the criminal prosecution." *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993). And even if a facial constitutional challenge contained within Ground Four was properly raised in this § 2254 petition, Bradley cannot obtain relief.

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). "Under the Equal Protection Clause, classifications that neither

implicate fundamental rights nor proceed along suspect lines are subject to rational basis review." *Jones v. Gov. of Fla.*, 975 F.3d 1016, 1029 (11th Cir. 2020). "A classification survives rational basis review if it is rationally related to some legitimate government interest[.]" *Id.* at 2034 (citing *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993)). Bradley has only presented a generalized and vague argument that no rational basis exists for setting the cut-off for PRR eligibility at three years. The state court denied Bradley's claim, noting that courts have rejected challenges to the PRR statute as facially unconstitutional. (Doc. 11-5, Ex. 10, appellate record. P. 412.) The court cited *Grant v. State*, in which the Florida Supreme Court rejected a claim that the PRR statute drew "no rational distinction between those who commit a new offense on the third anniversary of release from prison and others who commit a similar offense three years and a day after release[.]" 770 So.2d 655, 660 (Fla. 2000). Providing no authority to support the conclusion that this decision was contrary to, or involved an unreasonable application of, clearly established federal law, Bradley fails to show entitlement to relief under § 2254(d)(1).

Nor does Bradley show that the state court's denial of his as-applied federal equal protection challenge was contrary to, or involved an unreasonable application of, clearly established federal law. "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race,

religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318-19 (11th Cir. 2006); *see also McClesky v. Kemp*, 481 U.S. 279, 292 (1987) (stating that "a defendant who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination" and that "to prevail under the Equal Protection Clause, [a petitioner] must prove that the decisionmakers in *his* case acted with discriminatory purpose.") (internal quotation marks and citation omitted) (emphasis in original).

Bradley does not offer any evidence of discrimination against him in his criminal case. He does not, for instance, establish that the statute was selectively applied in his case on an impermissible basis. *See, e.g., State v. Cotton*, 769 So.2d 345, 349-54 (Fla. 2000) (rejecting a separation of powers challenge to the PRR statute on the basis of the prosecutorial discretion to seek PRR sentencing but noting that, "[o]f course, a defendant may still mount an equal protection challenge where prosecutorial discretion is alleged to have been deliberately exercised pursuant to an 'unjustifiable standard.'" (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978))).

Bradley does not argue or establish any other basis for finding that intentional discrimination against him in the application of the PRR statute in his case. Accordingly, Bradley fails to show that the state court's rejection of his as-applied equal protection challenge was contrary to or involved an unreasonable application of clearly established

federal law, or was based on an unreasonable factual determination. Bradley is not entitled to relief on Ground Four.

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id*. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Bradley must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Bradley has not made the requisite showing. Finally, because Bradley is not entitled to a COA, he is not entitled to appeal in forma pauperis.

It is therefore **ORDERED** that Bradley's Petition for Writ of Habeas Corpus (Doc. 8) is **DENIED**. The **CLERK** is directed to enter judgment against Bradley and in Respondents' favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on December 17, 2021.

Kathryn Kimball Mizelle
United States District Judge

28